# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

*Case No.* 2:17-cv-14016

Robinson St. Hilaire,

*Plaintiff,*

-*vs*-

George Hart
Mulligan's Beach House Bar & Grill d/b/a Mulligan's Acquisition Inc.
Mulligan's Management Group LLC
Shores Restaurants of Sebastian LLC
Mulligan's Acquisition Inc., and
Mulligan's Sebastian Acquisition LLC

*Defendants.*

# COMPLAINT & DEMAND FOR JURY TRIAL

Dated: January 13, 2017

Dale James Morgado Esq.
*Plaintiff's Counsel*

85 Wall Street, Suite 1100
New York, New York 10005
T: (855) 899-9121
F: (855) 499-9191
E: djm@morgado.us

# INTRODUCTION

Plaintiff, Robinson St. Hilaile, sues Defendants, Mulligan's Beach House Bar & Grill, George Hart (personally), Mulligan's Management Group, LLC, Shores Restaurants of Sebastian LLC, Mulligan's Acquisition, Inc., and Mulligan's Sebastian Acquisition, LLC (collectively "Mulligan's" or Defendants) for violating the Fair Labor Standards Act. In support of Plaintiff's complaint, he states:

# JURISDICTION

1. This action seeks to enjoin further violations, to recover unpaid overtime compensation, and recover an additional equal amount as liquidated damages, plus reasonable attorney's fees under the provisions of the Fair Labor Standards Act, 29 U.S.C § 201 *et seq.*, a law of the United States regulating interstate commerce. Consequently, this Court has subject matter jurisdiction under 29 U.S.C. Sec. 217 (Section 17 of the Act), 28 U.S.C. Sec. 1331, and by 28 U.S.C. Sec. 1337.

2. This Court has personal jurisdiction over the Defendants because both corporate and personal Defendants have their headquarters and reside in this district, and because they actively maintain six restaurants in this District.

3. Venue is appropriate under 28 U.S.C. Sec. 1391(b) because Defendants regular conduct business in this District and because of the events that give rise to this action occurred in this District.

# PARTIES

4. Plaintiff, **ROBINSON ST. HILAIRE**, resides in Fort Pierce, Florida.  He has resided in this District for three years preceding the filing of this complaint, *i.e.*, January 14, 2014 until the present.

5. Plaintiff began working for the Defendants seven years ago, *i.e.*, on June 8, 2009 and ending his employment on August 31, 2016.

6. During this time Plaintiff worked in the kitchen of a restaurant chain called Mulligan's Beach House Bar & Grille.

7. Plaintiff served as a "line cook;" a term commonly known in the restaurant industry to be the bottom their or lowest level food preparer.

8. As a short order line cook, Plaintiff cooked and cleaned the various food prep and cooking stations, e.g., the salad prep station, frying station and grill.  He would take the tickets given to him by the waitstaff, owners and management, and would cook items that did not take long, were quick and easy cook, and dishes that were generally simple.

9. Mulligan's Beach House Bar & Grill, is a fictitious business name and brand for a chain of seafood restaurants headquartered in the Southern District of Florida and owned by Mulligan's Acquisition, Inc., which in turn are owned by George Hart and JPB Partners Inc.

10. There are six locations which, all owned and managed by Hart and JPB, *i.e.*:

    a.  806 Indian River Drive, Sebastian, FL 32958

    b.  1025 Beachland Blvd., Vero Beach, FL 32963

  c. 61 W. Osceola Street, Stuart, FL 34994

  d. 2019 NE Jensen Beach Blvd., Jensen Beach, FL 34957

  e. 10 S Ocean Blvd., Lake Worth, FL 33460

  f. 14C Commercial Blvd., Lauderdale by the Sea, FL 33308

11. Plaintiff worked primarily at the 806 Indian River Drive, Sebastian, Florida location.

12. Hart and JPB have additional related corporate entities, but based on information and belief the following four entities are necessary for inclusion in this action:

13. Defendant, **MULLIGAN'S BEACH HOUSE BAR & GRILL, d/b/a MULLIGANS ACQUISITION, INC**., a foreign corporation incorporated in Delaware, with its principal Florida office at 1038 SE Ocean Blvd., Suite C, Stuart Florida 34996, and principal foreign office located at 8820 Columbia 100 Parkway, Columbia, Maryland 21045, and registered agent Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.

14. Defendant, **MULLIGAN'S SEBASTIAN ACQUISITION, LLC,** a Foreign Limited Liability Company incorporated in the State of Delaware, and listing a principal address of 8820 Columbia 100 Parkway, c/o JPB Partners, LLC, Columbia, Maryland 21045 and registered agent of Corporation Service Company, with a service address of 1201 Hays Street, Tallahassee, Florida 32301.

15. Defendant, **SHORE RESTAURANTS OF SEBASTIAN, LLC**, a Florida Limited Liability Company with its principal place of business of 806 Indian River Drive Sebastian, Florida 32958, (this Mulligan's Beach House Bar & Grill is the the restaurant that the

Plaintiff primarily worked at) and listing George Hart as its registered agent for service with a service address of 300 Colorado Avenue, Suite 201, Stuart, Florida 34994.

16. Defendant, **MULLIGAN'S MANAGEMENT GROUP, LLC**, a Florida Limited Liability Company with its principal address at 300 Colorado Avenue, Suite 201, Stuart, Florida 34994 and listing George Hart as its registered agent for service and and a service address of same, i.e., 300 Colorado Avenue, Suite 201, Stuart, Florida 34994.

17. Indeed, the above named corporate Defendants in this case act as one under the brand of "Mulligan's Beach House Bar and Grill."

18. Defendant, **GEORGE HART**, resides in Martin County, Florida.

19. Hart is an owner, president and manager of Mulligan's Beach Bar & Grill.

20. Hart, in conjunction with JPB Partners, manages the above named corporations.

21. Hart, in conjunction with JPB Partners either owns or has an interest in each one the entities named in this suit.

22. Hart is also an officer in the defendant corporations named in this action.

## GENERAL ALLEGATIONS

*A. An Employer - Employee Relationship Existed.*

23. An employee - employer relationship existed between Plaintiff and Defendants here.

24. Indeed, Defendants were Plaintiff's "employer" under the Fair Labor Standards Act.

25. Hart is an active owner, officer and manager. At Hart's direction, he uses his corporate power and authority to hire and fire employees for the Defendant entities, he

maintains and arranges employment records to be kept, he supervises conditions of employment, he determines rates of pay, and holds stock in the defendant corporations named herein.

26. Hart specifically controlled the terms and conditions of Plaintiff's employment by disbursing wages, setting work schedules, supervising conduct, reserving the right to terminate Plaintiff's employment, and otherwise managing all other traditional terms and conditions of employment.

27. As an officer, active manager and owner, Defendant, George Hart, falls squarely within the definition of "employer." Indeed, he is an employer as defined under the FLSA, and sued personally in this action having acted both directly and indirectly, in the interests of the defendant entities.

28. Management of the defendant corporations also set the terms and conditions of employment, told Plaintiff when and where to work, how to do his job, what he had to do, and otherwise controlled the term and the conditions of his employment.

## B. There is Traditional and Enterprise Coverage Under the Act.

29. Traditional coverage can be found here because the Plaintiff engaged in interstate commerce as part of his job and used various instrumentalities of commerce while doing so.

30. Indeed, the Plaintiff was engaged in commerce and production of good for commerce as the term is used in the Act, and while employed by the Defendants.

31. The work that Plaintiff was doing was part of the procedure and process necessary to sell food to the patrons of Mulligan's Beach House Bar and Grill, and otherwise was produced to market and move in commerce.

32. Enterprise coverage is also present here because Plaintiff engaged in interstate commerce (within the meaning the Fair Labor Standards Act), having Defendants employed more than two people, and collected more than $500,000 in revenues.

33. Defendants also engaged in interstate commerce through the use of the channels and instrumentalities of commerce.

34. More specifically, each restaurant and/or corporate defendant (*e.g.*, the restaurant Plaintiff primarily worked at in Sebastian, Florida), employs a number of people which are regularly engaged in interstate commerce.

35. Mulligan's is a "full service" seafood restaurant chain its website explains, going on to point out that it is "[o]pen for breakfast, lunch and dinner, 365 days a year."[1]

36. Besides serving the public every day, Mulligan's sells various products online, like "Mulligan's Wear," "Sauce & Seasoning" and "Souvenir Glassware."[2] These goods plus those they prepare and serve to patrons of their restaurants compete with similar goods produced by other businesses in and out of the state.

---

[1] mulligansbeachhouse.com/about-us

[2] http://www.mulligansbeachhouse.com/store-3/

37. The Defendants also engage in various other business endeavors, including marketing, event hosting, private room rentals, beach side parties, and of course the preparation and sale of food.

38. As such, Defendants are subject to not just traditional coverage, but enterprise coverage under the Fair Labor Standards Act.

## C. *There are no FLSA exemptions that apply here.*

39. The Fair Labor Standards Act provides that employees are included, protected and covered under the Act unless specifically carved out by exemption.

40. Here, there are no exemptions that apply to a employee whose duties are primarily manual labor and line order cooking.

41. Additionally, the Plaintiff was paid by the hour, making the most common exemptions, *i.e.*, professional exemptions entirely inapplicable. As such, Plaintiff is entitled to the Act's protections.

42. However, should Defendants claim that Plaintiff was paid a salary, Plaintiff's job duties as a short order line cook clearly show that he does not qualify for any exemption.

43. And to the extent that any exemption is asserted at all, Plaintiff states the burden rests with Defendants to establish through clear and affirmative evidence that the employee meets every requirement.

## D. *Relevant Time Period*

44. The Relevant Time Period for this case is August 31, 2016 to January 14, 2014.

45. In other words, work performed by the Plaintiff between August 31, 2016 and January 14, 2014 is within the last three years and it is not automatically excluded by virtue of a statute of limitations defense.

46. Therefore, Plaintiff's claim here is for pay and overtime that fall with the Relevant Time Period.

47. There are 137 weeks within the Relevant Time Period.

### E.  Rates of Pay

48. Plaintiff was paid by the hour.

49. Plaintiff did not receive a salary.

50. During the Relevant Time Period Plaintiff's regular rate of pay was $14.00 per hour.

51. Plaintiff's overtime rate is $21.00, which is 1.5 times his regular rate of pay.

### F.  Number of Hours Worked

52. As a line cook, the Plaintiff regularly performed more than forty hours worth of work in a given workweek.

53. During the Relevant Time Period, Plaintiff worked an average of six (6) days a week.

54. During the Relevant Time Period, Plaintiff worked an average of 18 overtime hours a week (a total of 58 hours per workweek).

55. As set forth above, in the preceding three years immediately following the filing of this action, Plaintiff was employed 137 workweeks between January 14, 2014 until August 31, 2016,.

56. During the Relevant Time Period, Plaintiff's workweek consisted of five ten hour days and one eight hour day.

57. Plaintiff's typical work day started at 11:00 a.m and he would stay until 9:00 p.m., or later if necessary.

58. Based off information and belief, the hours and amounts due to Plaintiff are as provided in the following chart:

Robinson St. Hilaire -vs- Mulligan's Beach Bar & Grill

## OVERTIME DUE

**Hours Worked**

| | | |
|---|---|---|
| Workweeks within SOL | 137 | 8/31/16 - 1/14/14 |
| Hours Per Week | 58 | Averaged |
| Overtime Hours Per Week | 18 | 58 hours - 40 hours |
| Unpaid Overtime Hours | 2,466 | 137 weeks x 32 hours per week |

**Overtime Due**

| | | |
|---|---|---|
| Regular Rate of Pay | $14.00 | |
| Overtime Rate of Pay | $21.00 | 14 per hour x 1.5 (time and a half) |
| Overtime Due | $51,786.00 | |
| Liquidated damages | $51,786.00 | |
| TOTAL | $103,572.00 | |

**Fees & Costs Due**

| | |
|---|---|
| Attorneys Fees | TBD |
| Court Costs | TBD |

### G. Bad Faith, Liquidated Damages & Three Year Statute of Limitations

59. Defendants have exhibited bad faith here. Their actions in overworking and underpaying Plaintiff are willful and knowing within the meaning of § 255 of the FLSA.

60. The Defendants knew Plaintiff was working overtime, that he was entitled to overtime, but choose not to pay it.

61. Indeed, this is not the first time that they have been hauled before this Court to answer for their pay practices. *See, Exobe Vilneard v. Mulligan's Management Group, LLC et. al.*, Case No. 2:15-cv-14248-RLR (SDFL).

62. Defendants have continuously violated the cited provisions of the Act and threaten and intend to continue violating these provisions unless enjoined and restrained by a judgment of this Court.

63. They have demonstrated a total disregard for the requirements of the FLSA, and shown a lack of respect for the judicial process overall.

64. More specifically, Defendants have in the past tried to undermine the judicial process by cutting back door deals in the settlement process by communicating directly with plaintiff

(despite being represented by counsel) and otherwise exclude this Court in the settlement approval process.

65. And despite being put on notice of the FLSA illegalities in their pay practices, Defendants choose not to correct their pay practices or remedy the harm Defendants actions have had on their workforce.

66. Violations go as far back as seven years, where from the very first workweek after Plaintiff's hire, Plaintiff was working in excess of the maximum hours provided by the Fair Labor Standards Act, still no provision was ever made and no payments were ever provided to Plaintiff at the rate  time and a half (1.5), for the hours worked in excess of the hours provided by the statute.

67. Defendants either were advised by their counsel that kitchen employees that are paid hourly, like the Plaintiff here need to be paid overtime, and choose not to follow it, or they failed to consult counsel concerning how to pay hourly kitchen employees.

68. The Defendants also failed to keep accurate records of the hours he worked.

69. Because their actions are willful, wanton, and in bad faith, liquidated damages and the three year statute of limitations apply here.

### H.  *Demands for Overtime Ignored*

70. The Plaintiff, during the time he was employed asked to be paid overtime.

71. The Plaintiff asked Defendants why he was not being paid overtime. .

72. Each time he inquired, he was either ignored, provided an excuse, or lied to.

73. On certain occasions Plaintiff was threatened to have his job taken away from him.

74. In addition to Plaintiff's own demands for the wages due to him, his counsel has demanded the overtime due to him on his behalf.

75. Defendants received Plaintiff's demand but the demand has yet to be satisfied.

76. Having failed to pay overtime, Plaintiff is entitled under the Fair Labor Standards Act, 29 U.S.C. Sec. 216(b) to all unpaid overtime worked, plus an equal amount as a liquidated damage penalty for Defendants' actions.

77. Defendants' refusal to pay the overtime due has made it necessary for Plaintiff to retain and employ the undersigned counsel to prosecute this case and incur reasonable attorneys' fees and litigation expenses. Plaintiff is entitled to fees and costs.

## COUNT I
*Unpaid Overtime Violation Under 29 U.S.C. Sec. 207 and 216(b)*

78. Plaintiff re-alleges and fully incorporates Paragraphs 1-77 as if fully stated here.

79. At all relevant times, Defendants were an "employer" under the Fair Labor Standards Act.

80. At all relevant times, Defendants employed Plaintiff under the terms and definitions of the Fair Labor Standards Act.

81. As an hourly employee performing the duties of a short order cook, Plaintiff is considered a non-exempt worker under the Fair Labor Standards Act.

82. Plaintiff was required by Defendants to work over forty hours per week but was not paid overtime for the hours worked over 40 in a workweek.

83. Defendants' failure to pay Plaintiff overtime compensation for his unpaid overtime is a violation of 29 U.S.C. §§ 207 and 216(b).

84. Defendants willfully violated the Fair Labor Standards Act within the meaning of 29 U.S.C. § 255(a) by knowingly failing to pay Plaintiff the proper amount of wages and overtime compensation.

85. As a direct and proximate result of Defendant's repeated violations of the Fair Labor Standards Act, Plaintiff has suffered, and will continue to suffer, damages.

**PRAYER**

**WHEREFORE** because the Plaintiff has suffered damages, as a direct and proximate result of the Defendants' actions, Plaintiff demands judgment against the Defendants for the maximum compensation Plaintiff is entitled to under the law, including a judgment against the Defendants for failure to pay overtime for all the hours worked over forty in a workweek, at a rate of time and one half (1.5), plus an equal amount for liquidated damages, along with attorneys' fees and costs of this action for violation of 29 U.S.C. § 207 and in accordance with 29 U.S.C. § 216(b), for judgment enjoining and restraining defendants, its officers, agents, servants, employees and attorneys, and all persons acting or claiming to act on its behalf, from violating the provisions of Section 15(a) (2) of the Act, both permanently and during the pendency of this action, and award damages, no less than the following amounts:

A. For the sum of $51,786.00 in unpaid overtime wages;

B. For the sum of $51,786.00 as a statutory liquidated damages penalty;

C. For pre and post-judgment interest as allowed by law;

D. For reasonable attorney's fees in an amount to be determined later;

E. For plaintiffs' litigation expenses and costs of suit in an amount to be determined later.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint and on all other issues so triable.

Dated: Friday, January 13, 2017

/s/ Dale James Morgado

Dale James Morgado
85 Wall Street, Suite 1100
New York, New York 10005
PH (855) 899-9121
FX (855) 499-9191
EM djm@morgado.us

*Attorney for the Plaintiff*